The next case is United States v. John and Johnson. Good morning, Your Honors. This case seems to me to be a fairly straightforward case of the government's failure to prove a racketeering enterprise. I say that the government failed to make this showing because they established no ongoing organization existed in this alleged Hull Street gang. And throughout the testimony in this case, there were four cooperating witnesses. And throughout the testimony in this case, each of the witnesses testified at one time or another, and I can lay it out more specifically, although it's laid out very carefully in the brief, Your Honors. But each one testified that they either weren't aware of the existence of this group, hung out there occasionally, but sold their own drugs, were involved in their own business. One fellow said, I was there because they were running dog fights out of the area, and I like the dog fights, but sometimes if someone came to the door, I'd hand them some drugs. Two of the four cooperators said that they were members of other criminal enterprises that involved selling drugs for other people. The closest we get to any relationship really with my client, Mr. Johnson, is the fact that they occasionally bought drugs together or sold drugs together, but really on a fleeting basis. You know, I don't want to age myself because I'm sure I was nine years old when I argued here, you don't have to laugh that loud, in the 80s, when all we focused on was what is a racketeering enterprise? And a racketeering enterprise didn't have to have all members sign up on the same day with the same goal and the same, you know, and getting orders from the boss every single day and bring the money back so that everybody could split it up relative to their rank. And that was essentially what an enterprise, a racketeering enterprise, comprised. Here what we have is absolutely every way to try to take facts that just don't fit together and call them a racketeering enterprise, because without the racketeering enterprise, the government can't charge the Vicar murders. And I know that the court understands that I don't in any way suggest that the murder of these individuals is something that should be overlooked by this court. But in fact, it's something that could way better have been focused on by a state court where there were state murders. These are not Vicar murders because there's no enterprise. And every way that the government... Your argument that there's no enterprise is that because the cooperators who testified didn't characterize it as such, it is therefore not an enterprise? Well, that would have been their best proof that there was an enterprise. I mean, one of the cooperators says, he knows my client from selling drugs. Well, right, but they're not... You know, the government always doesn't get the opportunity to put in best proof. They're sort of stuck with what they have out there. Understood. But if you take their best scenario as to each cooperator and as to all their proof, the only thing they have is a red house where some people hung out for a very brief period of time. And most of the people who hung out there were in the dogfighting business. There was occasionally a guy who, you know, if someone came to the door, I reached up on top, he said, and handed somebody drugs. He didn't get paid for it. He didn't have his... And several of them said, I sold my own drugs, I wasn't in any gang, I sold my own drugs, I wasn't in this organization, I didn't give any money back to Christian John. But sometimes he would buy me breakfast or he'd buy me a pair of sneakers. And I considered him my best friend or an old... Was there not evidence from cooperators and others of overlapping groups of people, including your client, engaged in either robbing and killing drug dealers or people who are perceived to have drugs for their drugs or money, or trying to kill them? Well, I think that the answer is yes and no, Judge. There was certainly testimony... I want to focus on the yes part. Okay. So there was evidence of that. I'll give you a perfect example. There is one incident where one of the cooperators agrees to help my client kill someone for $5,000. And one could argue that that was conspiratorial, racketeering-type organizational kind of evidence. But he then testifies that he had no intention of doing it, he was just trying to rip my client off for $5,000. So no, there isn't proof of that there. There's another fellow who pled guilty to this, Rico, and said, oh yeah, I was a member of the organization. And then on cross-examination, he said, I lied when I told that to the judge. It wasn't true. I wasn't a member of any organization. So... Was the jury not entitled to believe him when he said that he was part of the organization and discredit the testimony when he said he lied? Isn't that part of our case law? Of course it is, Judge. But at the same time, the same witness throughout his testimony made it clear that he didn't have the appropriate connections to any organized group. He said, one of them said, I was just out on Bainbridge Street. Another one said, I was out on Fulton Street. That's where I met Christian John, I sold with him there. He had his customers, I had my customers. Sometimes we got the same source, but we bought from the same supplier, but after we bought from the same supplier, I went out and I sold to my guys, my customers, and he went out and he sold to his customers. This, this whole street, if it's anything, appears to be a place where all kinds of people came through, but basically were involved in dogfighting. I mean, you have one guy, this one cooperator, Mackenzie, who seems in a sense to be one of the more involved cooperators, if there were such a thing. And he says that, he says that he worked with Christian John from time to time, but really most of his work was done with someone named Smack and Rock, and that they were brothers who ran a different operation, and he ran their, he was in charge of their grow operation. He said that Christian John never paid him, and when you read the whole of his testimony, he made it clear that his allegiance, his alliance, was to the Smack and his brother. So they don't have Mackenzie, who's one cooperator. This was charged as an association fact, otherwise, is that right? Yes, your honor. Yes, it was. But it's a racketeering enterprise. I mean, it is a recall, yeah. There were other incidents in which each of these cooperators, this fellow Mackenzie again, he said that my client never paid him, that he never purchased drugs from my client. Every, every indicia of the existence of an organizational force that would make out a RICO is really missing from this. There's the, there's the, the allegation, but all of the government's proof is really, in a way, inconsistent with the notion that there is a racketeer, an organized racketeering enterprise, yeah. And I'm not saying clearly that they have to sign on a line, and they all have to be members, and they all have to be members at the same time. And these are individuals who came and went over a decade-long period. But several of them said that racketeering enterprise starts in 2000. Several of them said they didn't even meet my client until 2002, three, and four. And that those individuals, and they could come in and out of an enterprise. A hundred percent. Of course, your honor. But these people, when they came in, if one came in, at the time he met my client, and they went out and they sold drugs on Bainbridge Street. Somebody else went out and sold drugs with him on Fulton Street. So this was not Hull Street. And then that guy went to jail for four to six years. You never saw him again. He didn't go back and do work with him again. This was just disparate people who met in the street. And my guy, in fairness, the government has every reason to think this is a bad guy, and we'd like to incapacitate him. But I submit respectfully, your honors, that that was a job for the state court, and not for the federal court, because racketeering has a meaning. And every time this court has defined racketeering, going back to Tercat, they've said, this is not it. I mean, the first time I read it, as I prepared, I said, where's the enterprise? And every fact, as I read it, suggested that the government failed in its proof as to the enterprise. This is, in its essence, a sufficiency argument. That's correct, your honor. But sufficiency as to the, you know, I rarely stand up here, judge, and argue sufficiency of the evidence. This is insufficient proof that an enterprise existed. I feel better saying it that way. Thank you, Ms. Kelman. And you've reserved two minutes for rebuttal. Yes, sir. Mr. White. Good morning, your honors. I do have to piggyback somewhat on Ms. Kelman's argument, of course, because, as she compellingly pointed out, the evidence of an enterprise was quite lacking here. In this case, with respect to Mr. Johnson, it goes considerably further than that, because he was not even found guilty of RICO or RICO conspiracy. He was acquitted of both of those. I submit, in large part, because the evidence was weak of an enterprise to begin with, and, very importantly, because the government's own cooperating witnesses stated that he was not part of a gang or their gang, and certainly not the charged enterprise, to the extent that there was any evidence of a charged enterprise. But, bewilderingly, he was somehow found guilty of a Vicar murder. He was charged with only one Vicar murder, and I'm certainly not intending to minimize the seriousness of Mr. Obermeirle's death, but he was not charged with being a regular member of this charged enterprise. It was this single incident in which there was simply no evidence that it related, to the extent that there was an enterprise, to any enterprise. There was some evidence. First of all, again, I need to emphasize that Mr. Johnson, who testified in his own defense, something of a rarity in a case like this, denied any involvement at all in that murder. What do we read into that? Sorry, I'm just, it's not unusual for a defendant. Of course, certainly. I'm pointing out simply that the government had pointed out that we didn't challenge that he was involved in the case, and we certainly do challenge that. Our position is that these cooperating witnesses were, in fact, involved. They were covering up for themselves. It's very unusual that Mr. Johnson only came into this case years after the prosecution had began, and as your honors are aware, he did file his own supplemental brief, in which he pointed out the many, many instances of perjury on the part of these witnesses. But putting that aside, with respect to the sufficiency of the evidence on the Vicar murder itself, there simply was none. The judge made it very clear that it's not enough that Mr. Johnson had some affiliation, had done some business at some point, or hung out with people who were charged with being members of the enterprise. He has to have been a member himself. And as I pointed out, Mr. McKenzie testified that that was not the case. Mr. Jones testified that that was not the case. And several other people testified, lay witnesses testified that it was not the case. There was some evidence. He acknowledged he had grown up with Christian John. They knew one another. He knew members. They saw one another in passing. As Ms. Kelman had argued previously, there was a lot of that. People knew one another. There was the unfortunate fact of dogfighting taking place, where people congregated to watch that. But it was not an enterprise, and certainly not an enterprise of which Mr. Johnson was a member. And most importantly, none of that had anything to do with the death of Mr. Obermuller. There was extensive testimony, and Mr. Johnson testified to it himself.  And even Judge Block, in his decision . . . he did not go into great detail, unfortunately, and didn't give any of us a lot to work with. But he did acknowledge that, yes, it seems as though the evidence here leaned in the direction that this homicide happened as a result of a dispute over a sale of a vehicle. Am I not right that there was testimony by a cooperating witness, Mr. Dianenda, that during the murder that you're describing, Mr. Johnson said, Where are your drugs? Where's your marijuana? He did testify to that, yes. But nevertheless, Your Honor, that does not prove involvement in an enterprise. No, but what . . . I'm just following up on your statement that this was entirely about a car. I cannot claim it was entirely. And as Judge . . . But the jury had before it some evidence that the murder was drug-related. I would not adopt that characterization, Your Honor. Why not? He did . . . because the . . . apparently, if you accept the cooperating witness's testimony . . . Of course. . . . on its face value . . . Some evidence. . . . as we must. From his testimony that the murder was at least partly drug-related. Well, ultimately, it was determined that there was no drugs, and there was no money. No, no, no. I understand that. But the murder was drug-related. When you ask someone . . . Where are you? Where are the drugs? Isn't it a basis, an evidentiary basis, for the jury to determine that at some level, some minimal level . . . You can argue about whether it's a sufficient level. But at some level, there's evidence before it that this murder was related to drugs in some way. Would you agree with that? I certainly do dispute whether it's legally sufficient. Whether there was some evidence on the table, there was testimony to that effect. Although, just to step back a bit, ultimately, there was . . . The testimony was that where are the drugs, where is the money, as Your Honor pointed out. However, ultimately, there was no drugs. There was no money. And, the murder happened. So, it could not have been motivated by those factors. Well, I think . . . I thought the testimony was in part that when Mr. Obermuller refused to admit that there were drugs, that's when they decided to kill him. Well, none were located. So, there were none. I don't know if that quite answers your question, but I think it's an important point. Because, ultimately . . . First of all, that seems to be heading off in the direction of the drug-related murder, rather than the Vicar murder. Well, I understand that. But, I think you were . . . I'm trying to understand your position. And, you were taking a slightly more aggressive position, which was that it was not related to drugs. It was related to a car. And, there was some testimony that it was, in fact, related to drugs. There was . . . Maybe I've made too big of a deal of it. There was some evidence of that. But, overwhelmingly . . . But, it was charged in connection with a conspiracy to distribute 280 grams of cocaine base, right? Yes, that is correct. And, again, you know, it's very troubling, Your Honor. As Ms. Kelman pointed out, as both parties pointed out in our briefs, there was some evidence of drug dealing. With respect to Mr. Johnson, he acknowledged that, over the years, he had engaged in some drug dealing. In 2005, in particular, well before the Obermüller homicide occurred. And, more importantly, there was no evidence of drug dealing between Mr. John and Mr. Johnson. They were charged with being in a conspiracy. There was no evidence of that. There were several cooperating witnesses who testified that they, on their own, had bought or sold relatively small quantities of drugs to Mr. Johnson. But, not enough to establish a drug conspiracy or a drug conspiracy connected to the homicide of Mr. Obermüller. Thank you. You've reserved two minutes for rebuttal. Thank you, Your Honors. Good morning. May it please the Court. Good morning, Your Honors. Robert Polomini from the United States. I was one of the trial assistants below. Because the evidence presented at trial, when viewed in its totality and drawing all inferences in favor of the government, was sufficient for any reasonable juror to convict the defendants beyond reasonable doubt, the judgments of conviction should be affirmed. And I guess I'll pick up on the drug-related murder of Kevin Obermüller. The evidence was more than sufficient to establish that that homicide was drug-related. Drug-related in connection with the conspiracy that it's charged as being related to? Yes, Your Honor. Go ahead. I don't want to stop you, but if you would tie it into that 280-gram conspiracy, that would be helpful. Yes, Your Honor. The evidence established that Kevin Muller was killed in Marvin Johnson's stash house, 186 Madison Street. The evidence established that for a period of years, Marvin Johnson sold crack cocaine from that location. Michael Farmer, one of the cooperating witnesses, testified that around that time, he was selling for Marvin Johnson $1,000 a day of crack cocaine for several months, which, when you extrapolate it out, gets you to that 280 grams of crack cocaine within a few weeks, as Judge Block found and as the jury properly found. How is this related to the enterprise that was charged? Well, it's related to the enterprise, Your Honor, in the sense that he knew who to call when he had a problem. And he called individuals that he knew, who he gambled on dogfighting, who he participated in gambling on dogfighting with, and those two individuals were Christian John and Shaquan Jones. And he called them. Why isn't that a dogfighting enterprise as opposed to some other enterprise? Well, it's a predicate for the enterprise that was charged. It's one facet of the enterprise. It's one criminal activity that the defendants were engaged in. Not the only, but one. And he called them because he was planning. There was a dispute with the car. I don't think there's any doubt about that there was a dispute about the car. But Kevin Obermuller was also Marvin Johnson's drug dealer. And so when he had a dispute about the car, he also called the two individuals who he was involved with in other criminal activity, called them over, and they robbed and killed Kevin Obermuller. And part of the reason why they robbed and killed him was because he was Marvin Johnson's drug supplier. And that's how you get to, he knew about this enterprise. He was involved about this enterprise. He knew Shaquan Jones and Christian John were drug dealers. He knew that they robbed drug traffickers. And he called them over, and he, along with them, killed his own drug dealer. Is that enough to show that he was motivated to solidify his standing in the enterprise? Well, I think it's also, Judge, he could be motivated to get into the enterprise as well. I mean, he knew what these guys were up to. He knew what they were about. He knew that if he wanted to participate in criminal activity with them. What was the government's theory? Was it that he wanted to solidify his standing in the enterprise or that he wanted to enter the enterprise at that point? I think it could be read. Well, you would know the government's theory better than I would. Of course. So what was the government's theory? I mean, at that time, he wasn't, you know, he was, I think the government's theory was that he was a member of that enterprise for a very short period of time. You know, we didn't have any evidence. At the moment. At the moment. We didn't have any evidence that he continued to engage in that enterprise. He wasn't trying to join it at that point. My problem is that, you know, this is a bit of evidence, but why is this enough? Why does this get you over the burden of proof you've got on this point? There's no dispute that the jury was incorrectly, that the jury instructions were improper. And the judge gave proper jury instructions to the jury. The jury reviewed the evidence and was entitled to draw reasonable inferences for the government. And based on. That's always true in the sufficiency of the evidence challenge on appeal. All right. We've got a conviction. That's why we're here. But the question that Judge Parker is asking is, this is a very, arguably very thin read with respect to Mr. Johnson and his participation in the enterprise. And what you just told us was that it was just that one moment in time that Mr. Johnson interacted with this enterprise in a legally relevant way. Is that correct? Not only that one time. I mean, there's evidence that he was gambling on dogfighting with these individuals regularly with Christian John, Michael Farmer, Kai McKenzie. So it's not like this is just out of the blue. He certainly was engaged in criminal conduct with these individuals. There's evidence that he was selling drugs with Michael Farmer repeatedly for an extended period of time. There's evidence, albeit not in extensive amounts, but there is evidence that Christian John sold Marvin Johnson crack cocaine on occasion. So it's not that it was just a one-off isolated incident. There's a reason why these individuals were in that basement together on that night. It's not by coincidence. It's not by, you know, randomly. It's because they had engaged in criminal activity together for years. And so I think the jury was entitled to draw the inference that in connection with that homicide. Let's say that there are two rival gangs. And a third gang tries to take over some turf, some overlapping turf. And you and I are the heads of the two initial gangs. And I see a third gang come in. We've got two separate enterprises. And I call you and I say, we've got to stop these guys. Does that make me a member of your enterprise? Is that enough evidence to show that I'm motivated to increase my standing in your enterprise? Or am I just trying to protect my enterprise? Would you answer that question? It would probably not be sufficient, but I'm not. Well, what's the difference between what I just described and what happened with Mr. Johnson? Because what you told me was, or what you told us was, and I'm just thinking about this. I think what you told us was that he called his old buddies. And I understand that they were part of a dogfighting enterprise. But he called these people that he knew to help him deal with his drug supplier. So what's the difference between that and the scenario that I just described? I think it goes a little beyond that, Judge. I think he also recognizes that they are drug dealers themselves. He knows that they rob drug dealers. He, I think the jury was entitled to infer, having him, not only there was the personal problem he was having with Obermuller over the car, but there was also now an opportunity to rob Kevin Obermuller of drugs. And he knows that Shaquan Jones and Christian John, they robbed drug dealers of drugs. And he knows that because he's engaged in criminal activity with them previously. And he knows who they are. He has a relationship with them. Does that insert him into the enterprise, or am I not asking the right question? It inserts him. Again, it's because he was involved in other facets of the enterprise. Again, he was involved in the dogfighting, the gambling. He was involved in the drug sales. He doesn't have to be involved in every single aspect of the enterprise. But he knows because of his participation. Again, what you're saying is that the enterprise, let's just forgive me, Ms. Kelman, but the John enterprise for now, the Hall Street enterprise is better, understanding that that's not the way that the participants necessarily self-identified or identified it. But you're saying that the Hall Street enterprise, based on the government's theory, was a much more wide-ranging enterprise that included dogfighting, included drugs, included murder? Yes. And gambling. Those were frantic acts that were charged. And he participated in the enterprise prior to the Obermüller murder in connection with the dogfighting aspect of it. That's correct. And was using another part of the enterprise, another aspect of the enterprise on the day of the murder. Correct. Was taking advantage of another. Correct. Did he do anything other than attend the dogfights? He gambled on those dogfights. They bred, they raised the dogs together, they came together, and they gambled thousands of dollars on those dogfights. And that's Michael Farmer, Kai McKenzie, Christian John, Marvin Johnson, and others. I'd also like to address the structure, I guess, of the enterprise itself. And the Supreme Court in Boyle has made clear that there's no real structure that's necessary. It's not really what the enterprise calls itself. It's not what their hierarchy is. It's not who's paying who. It's what it does. And here the enterprise was Christian John and his subordinates robbing and killing drug traffickers, their drug suppliers in many instances, so that they can get the drugs and the cash to fuel Christian John's drug enterprise that he was running from Hull Street. Now, Ms. Kelman claims that there's no—these are many—I guess to paraphrase her, it would be that these are just kind of independent operators, there's no allegiances, there's no real structure here. And I think that when you go back to the transcript and you see that it's Christian John who really is in charge of everything. He's managing everything. He's planning everything. He's actively participating in all criminal activity. And he's doing that using his underlings, individuals like Michael Farmer, who told the jury that he viewed Christian John as his brother. He looked up to Christian John. He wanted to be like Christian John. Kai McKenzie— I've got a brother, but I look down. I'm not sure that's a good analogy. Kai McKenzie, similarly— He's shorter than I am. He told the jury that, again, he respected Christian John. He wanted to be like Christian John. So while we're here, and I think this is the right place to ask this question of you, Mr. Palamini, what evidence is there from which the jury could reasonably find that John was in a conspiracy with Johnson such that John knew about the 280 grams or would have known, should have known about the 280 grams distributed? Well, there is evidence, again, not extensive evidence in terms of their drug transactions together, but certainly Michael Farmer testified that Christian John sold Marvin Johnson crack cocaine on several occasions. He knew, again, it goes back to their knowledge of their drug activities based on their experiences together. So if he sells Johnson, accepting the evidence that he sells Johnson drugs, is that a sufficient basis from which the jury could find, infer that, therefore, he knew that Johnson was selling that? Certainly, if he's—the amounts, I think, that were being sold by Christian John to Marvin Johnson would indicate to Christian John that Marvin Johnson was selling those. Because the amounts were large enough that they were sale amounts, not just— Correct. Okay. And what's the evidence? Could you just— Sure, Judge. I don't need a page, but you can just tell me what— It's Michael Farmer. He was asked. Okay. Got it. It's in the Farmer testimony. It's in the Farmer testimony, correct. Okay. In terms of also just to expand upon the enterprise, those robberies were conducted so that Christian John could, again, get the drugs, get the drug proceeds, and resell those drugs, and then buy more drugs with the cash that he stole. And that's borne out in Kai McKenzie's testimony when asked, you know, in terms of the Jason Bostic and Aaron Formey murders, what did you do with the drugs that you robbed from them? I sold them and I gave the money back to Christian John, and he was able to keep $25 to $50 per pound that he sold. Similarly, the Kevin Reed robbery that was perpetrated by Michael Farmer and Desmond James, what did you do with the drugs? Michael Farmer said, we took the DVD player that we stole, we took the PlayStation, and we gave the methamphetamines to Christian John. So those are just some examples of the crew coming together to further Christian John's enterprise, an enterprise that Kai McKenzie was certainly a part of for years. He testified that for years he would be at Christian John's residences selling marijuana from Mr. Kelman's point, I guess, is that the term enterprise has been so watered down over the course of the last several decades or few decades that anybody could be a member of any enterprise and not even really fully appreciate that they're a member of an enterprise. Would you just address that higher level point, that is, where does this end? And I understand that people don't need to self-identify in a gang or in various organized syndicates as a member of the syndicate. They don't even have to fully appreciate or understand that. But at some level, there's got to be an end. Where is that line, according to the government? Well, I think it goes to the duration of the enterprise. I mean, here you have Christian John. He's robbing and killing beginning in 2003. He starts with Shaquan Jones. In 2004, he starts with Desmond James. In 2006, he's committing robberies with Johnson Jones. In 2008, it's with Farmer McKenzie. For an eight-year period or so, he's engaged in robbery and drug dealing with various people. And it's more than that. They're meeting with him every day. Kai McKenzie is at his residence every day selling drugs. They're gambling on dogfighting regularly at Christian John's residences. They're breeding fighting dogs there. They're storing guns. They're holding guns for each other. It's more than just one-off instances of drug, you know, robberies of drug dealers. It's a pattern. It's a group of people coming together and continuing a pattern of criminal activity for a number of years. And so it's not just, you know, the Supreme Court looks to interpersonal relationships between members of the enterprise. You have that here. It looks to longevity, duration of the enterprise. You have that here. And so while, you know, in the organized crime world, we may have a very sophisticated enterprise, to your point, Your Honor, you know, that's maybe more than sufficient to establish the enterprise. But here the question is not, you know, how much did you need, you know, how great it was. It was, was it sufficient for a reasonable juror to conclude that there was, in fact, an enterprise? And the government submits that there was. So if I am thinking about it in terms of sort of a boys club in which they're all hanging out together and doing various nefarious and certainly illegal things, it includes drugs. It includes dog fighting. It includes gambling on dog fighting. That's sort of the meat of what this enterprise is in the government's view. Yes, coupled with the robberies and the murders. Right, right. Which act to, you know, fuel those other criminal activities. Well, the murders are related. Are they related to dog fighting? I don't think they are, at least as I see it. How does the reasonable juror conclude that any of those murders relates to anything other than drug dealing? Well, I think a jury can conclude to the extent that those robberies were successful in the sense that they, you know, they got cash from the robberies. They were able to, you know, breed their dogs. They were able to, you know, raise their dogs. Spiff up the clubhouse. Exactly, Your Honor. And there's also Christian, it's not only, you know, there's elements of Christian John protecting his enterprise. There's the Dequan Shelton murder where Dequan Shelton is a rival Crips gang member. And, or Christian John at the time was a Bloods gang member. And Dequan Shelton robbed Christian John of $25,000 in cash and several pounds of weed. He went into his house, much like Christian John did repeatedly. He, he, Dequan Shelton did the same to him. The very next day, Christian John killed Dequan Shelton. And he did it on Hull Street. It's not a coincidence that he did it there. He did it, I think the government, the government argued and the jury was, could reasonably infer. He did it to send a message that I will protect my turf. He, he assaulted Michael Farmer. He burned Michael Farmer when he thought Michael Farmer was being disloyal to him. And burning is significant. It leaves marks. He'll, Michael Farmer will have those marks for the rest of his life. For people who know Michael Farmer, who know Christian John, the word gets out. That's what happens when you cross Christian John. And that mark will last forever. Those are calculated decisions by Christian John to protect his turf. When there was a dispute over the robbery of the, of the jewelry store proceeds, Christian John shot up, he shot up Hull Street. There was a murder two weeks or three weeks later because there was a dispute over those, over those proceeds. And Messiah Oakley, who was involved in that Harston's robbery with Christian John's crew, there was a dispute between Oakley and John. They fought on, on Hull Street. Josel Blake, another participant in that robbery, was killed. And then two weeks later, the jury learned, Christian John and Shaquan Jones conspired to kill Messiah Oakley in retaliation. Again, there's more, there's elements of just, it's not just drug trafficking. It's retaliation. It's interpersonal relationships. It's duration. It's longevity. Thank you, Mr. Poliman. Thank you. Ms. Kelman. Thank you, Judge. Just briefly, Your Honor. I'm not sure I'm moved off the position that I started from. But it seems to me what the government has now described is my client is a one-man crime spree, who along the way picks up people who help him or don't help him. But their failure to establish the enterprise that they've charged in this particular enterprise is not my client acting on his own, but with some group that they say is a racketeering enterprise, the Hull Street crew. Now, you have four- Well, if you have the leader of an organization, which is how I took the government's summary, most recent summary, I mean, you can't say that there's not an organization just because one person's a leader of it, can you? Well, but if you don't have the same members and you don't have the same goals, and they're not members at the same time and they don't have allegiance to my client, then it seems to me you may have a head, but he's a head of nothing. You have four cooperators, Judge, who not a single one of them, not one, acknowledged the existence of this alleged enterprise. When they were asked, did you know about the Hull Street crew, one of them said, not until the government told me about it. He was a cooperator. And every one of them said, one said, well, I worked with Christian John for some time, but most of the time I was selling drugs with someone named Chinaman. One of the other cooperators said, well, I sold drugs sometimes with Christian John, but most of the time I was working with Smack and his brother growing weed. So these are people who were transient in their own criminal conduct, and if their paths crossed with my client, well, they crossed with my client. But the notion that my client heads any kind of an organization that could even loosely be described as a racketeering enterprise, it seems to me, the crimes notwithstanding, the evidence doesn't exist. The closest the government got was to have somebody say, yes, yes, I was a member of the organization. During his plea on cross-examination, he said he lied to the court. So I think you have a lot of terrible crimes, and you have a lot of terrible crimes here, that rest on the back of the proof of an enterprise that, in my view, the government failed to prove. Thank you very much, Justice Kellman. Thank you, Justice Kellman. Mr. White? Thank you, Your Honors. Frankly, I think that Your Honor's questioning of Mr. Polamini pretty well highlighted many of the defects in the proof with respect to the Vicar murder. I just want to point out the testimony of Mr. McKenzie. To the extent that, yes, they did spend time together, he nevertheless testified that Marvin was barely over there. And this was in the time prior to the Obermüller homicide. To the extent that Mr. Polamini argued that, well, it wasn't necessarily to raise his position in the enterprise, but possibly to join it, since Mr. Polamini basically acknowledged that even under the government's theory, it was only an extremely short period of time that they're alleging he was part of this enterprise, there was no evidence of Mr. Johnson being involved with the enterprise following the Obermüller homicide. So that doesn't make sense if the theory was that he was trying to join the enterprise. The evidence basically shows the exact opposite. With respect to... Let's assume the accuracy, just for now, understanding that you obviously and your client vigorously denied it. But let's assume the accuracy of the cooperator's testimony. Why then would Mr. Johnson call Mr. John and the others to his home to murder Mr. Obermüller? Assuming the accuracy of the testimony. Let's assume that for a second. Yes. Because I'm trying to think as a juror might think. Of course. And Mr. Polamini gave a reason that makes sense but doesn't provide proof that Mr. Johnson was a member of the enterprise. He knew who these people were and what they did. The same thing. A person in a neighborhood controlled by organized crime might have, for their own reasons, caused to consult the godfather because he knows you have a problem. This is the guy that can take care of it for you. Does that make that neighborhood resident a member of the enterprise? I don't think any jury would find that. And certainly that wasn't the case here. Thank you. Thank you very much, Your Honors. Thanks to all of you for the argument, helpful argument. We'll reserve decision.